[Crim. No. 15187. First Dist., Div. Two. Dec. 20, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
GERALD JOHN LIPINSKI, Defendant and Appellant.

## Counsel

Michael H. Metzger, Ivan S. Fisher and Stephen Heiser for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**BRAY, J.**\*—Defendant and appellant John Lipinski appeals from judgment, after jury trial, of the San Francisco Superior Court, convicting him of violation of section 182 of the Penal Code and section 11912 of the Health and Safety Code (conspiracy to sell LSD, a restricted dangerous drug).

### Issues Presented

1) The refiling of the conspiracy charge after its dismissal at the preliminary examination was not error.

2) The ruling on the admissibility of Miss Radford's statements is not a factual finding that Van Raam's testimony was inherently incredible.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## STATEMENT OF FACTS

The pertinent facts appearing mainly in the preliminary hearing transcript may be summarized as follows: On July 23, 1970, John D. Miles, an undercover agent of the Bureau of Narcotic Enforcement, contacted appellant's confederate Margaret Toni Radford (Miss Radford) in San Diego in order to purchase a large quantum of LSD. Miss Radford agreed to sell 5,000 LSD tablets to Miles for 35 cents per tablet. The following day they met at the San Diego Airport for the purpose of traveling to San Francisco where Miss Radford would obtain the LSD from an individual named "Eric." Before departure for San Francisco, Miss Radford tried to call Eric twice on the telephone. The call was to be charged to the local number of 415-383-2898.[1] Miss Radford could not reach Eric on the phone and, as a consequence, the trip to San Francisco was postponed until the next day.

On July 25, 1970, Miles and Miss Radford met again at the San Diego Airport, and by an early afternoon plane they both flew to San Francisco to complete the deal. Aboard the plane Miss Radford explained to Miles that Eric would wait for them at the airport. After arrival in San Francisco, Miss Radford, leaving Miles behind, went to contact Eric. Some five to ten minutes later she returned and informed Miles that Eric was afraid that Miles was a "cop" because he had short hair, and also that Eric wanted the money first before delivering the tablets. Miles disagreed as to the advance payment. Miss Radford nevertheless assured him that he would secure the stuff approximately after 10-15 minutes, indicating that eventually she should go to the car to get it. When Miss Radford walked away, Miles saw her meet with a white male who was later identified as appellant. After 15-20 minutes Miss Radford returned with 4,000 LSD tablets which she said she had retrieved from a locker. The tablets were in a brown and white paper bag, secured with masking tape. Before her arrest, Miss Radford stated to Miles that she was to get $400 out of the purchase price, while the remaining $1,000 was to be turned over to Eric.

Miles' testimony was partly supplemented, partly corroborated by Agent Van Raam, another employee of the narcotic bureau. In his

---

[1]At the trial it was stipulated that during the relevant period the above telephone number had been paid for by appellant. It was likewise shown at the trial that in addition to his own, appellant also used the names of Vincent Eric Keller, Eric Vincent Kouffman, Eric Kouffman, and Eric Monde.

preliminary hearing testimony, Van Raam stated that he had known appellant from a prior contact. On July 25, 1970, he arrived at the San Francisco Airport at 2 p.m. and took up surveillance in the closed corridor spanning the central and south terminals across the upper level. He observed appellant some 40 minutes thereafter walking toward the P.S.A. concourse. Some 20 minutes later, at 3 p.m., the agent observed appellant and Miss Radford walking in the opposite direction down the corridor, toward the south terminal. Following them from various distances, Van Raam observed the pair going to a dark-colored Jaguar automobile which was parked on the right side of the center island in front of the lower level of the central terminal. Reaching the car, appellant leaned inside, took out a white cylindrical paper object with brown and orange markings on it and handed it over to Miss Radford. Miss Radford fumbled with her clothing after accepting the package and went back inside the terminal. Van Raam, who observed the events from about 30 feet away, took down the license number of the Jaguar. He then contacted the Department of Motor Vehicles in Sacramento and obtained the necessary registration information relating to the car. As a result, appellant, who had left the airport right after the transaction, was soon arrested on his way home to Sausalito.

Upon the foregoing facts, appellant, who had been charged in the criminal complaint on three counts (conspiracy to sell LSD, a restricted dangerous drug; sale of LSD; and possession of LSD for sale), was bound over by the magistrate and was held to answer only on the substantive charge of sale. In the amended information filed on December 9, 1970, however, appellant was recharged not only with the substantive offense of sale, but also with conspiracy to sell LSD in violation of section 182 of the Penal Code and section 11912 of the Health and Safety Code. At the ensuing jury trial, appellant was found guilty of conspiracy to sell narcotics but was acquitted of the substantive offense of sale.

■ 1) *The refiling of the conspiracy charge after its dismissal at the preliminary examination was not error.*

Appellant's main contention on appeal is that the refiling of the conspiracy charge constituted reversible error in the factual context here present. In support of his position, appellant first contends that the circumstance that in determining the charge against appellant the magistrate disregarded Van Raam's testimony, and his ruling that Miss Radford's hearsay statements to Miles were inadmissible as to appellant

were, in essence, factual findings which, under the rules outlined in *Jones* v. *Superior Court* (1971) 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241], prevented the prosecution from reinstating the conspiracy charge in the amended information. In the alternative, appellant claims that even if the refiling of the conspiracy charge was proper, his motion to dismiss the amended information should have been granted by the lower court for lack of sufficient evidence. For the reasons which follow, we are unable to accept any of these arguments and affirm the judgment.

In *Jones* v. *Superior Court, supra,* our Supreme Court reviewed the judicial analysis of the potential conflict between section 8 of article I of the California Constitution (now art. I, § 14)[2] and Penal Code section 739,[3] and concluded that an information which charges the commission of an offense not named in the commitment order will not be upheld unless (1) the evidence before the magistrate shows that such offense was committed, and (2) that the offense arose out of the transaction which was the basis for the commitment on a related offense. (Pp. 664-665.) In elaborating further on the matter, the Supreme Court pointed out that the foregoing rule has been applied to uphold the addition of an offense unnamed in the commitment order even though the magistrate has expressly or impliedly concluded that the evidence failed to show probable cause that the offense had been committed (*Jones* v. *Superior Court, supra,* at p. 665; see also *Parks* v. *Superior Court* (1952) 38 Cal.2d 609, 613-614 [241 P.2d 521]; *People* v. *Bird* (1931) 212 Cal. 632, 644-645 [300 P. 23]).

In interpreting the rules laid down in *Jones,* in *People* v. *Farley* (1971) 19 Cal.App.3d 215 [96 Cal.Rptr. 478], we observed that the pivotal reason for the decision in *Jones* was the circumstance that the magistrate there had made material *factual findings* disbelieving the testimony of the prosecutrix which constituted the very foundation of the case. ■ From this rather significant circumstance, as well as the whole rationale of *Jones,* we concluded "the practical rule to be that in

[2]Article I, section 14, which has replaced section 8, sets forth in pertinent part that "Felonies shall be prosecuted as provided by law, either by indictment or, after examination and commitment by a magistrate, by information."

[3]Section 739 provides that "When a defendant has been examined and committed, as provided in Section 872, it shall be the duty of the district attorney of the county in which the offense is triable to file in the superior court of that county within 15 days after the commitment, *an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed.* The information shall be in the name of the People of the State of California and subscribed by the district attorney." (Italics added.)

cases *where the magistrate makes factual findings which are fatal to the asserted conclusion that a particular offense was committed, the district attorney may not recharge that offense in the information. A clear example of this would be where the magistrate expresses disbelief of a witness whose testimony is essential to the establishment of some element of the corpus delicti.*

*"Where, however, the magistrate* either expressly or impliedly *accepts the evidence and simply reaches an ultimate legal conclusion therefrom* —i.e., whether or not such evidence adds up to reasonable cause that the offense had been committed—*such conclusion is open to challenge by inclusion in the information* which action is thereafter subject to attack in the superior court under Penal Code section 995, and ultimately to appellate review." (*People* v. *Farley, supra,* at p. 221; accord: *Dudley* v. *Superior Court* (1974) 36 Cal.App.3d 977, 983-985 [111 Cal.Rptr. 797].) (Italics added.)

█ The preliminary hearing transcript at bench is completely devoid of any reference that the magistrate passed upon Van Raam's credibility and made a factual finding that his testimony was unbelievable. All that appears is that upon weighing the record as a whole, of which Van Raam's testimony was an integral part, the magistrate concluded that the evidence presented to him at the preliminary hearing was sufficient to establish the requisite connection between appellant and the criminal transaction even without Van Raam's testimony, and the facts adduced at the hearing were adequate to bind over appellant on the substantive charge of sale of narcotics. This is, of course, a far cry from the assertion that the magistrate made a determination discrediting the testimony furnished by Van Raam. While the record is absolutely silent with regard to Van Raam's credibility as a witness, it reveals that the magistrate accepted the evidence contained in the preliminary hearing transcript, and his personal opinion that appellant was not chargeable with conspiracy amounted to no more than a sheer legal conclusion drawn from the evidence. As pointed out in *Farley,* such legal conclusion or inference is clearly open to challenge, and the district attorney may test the existence of probable cause by including the omitted charge in the information.

█ 2) *The ruling on the admissibility of Miss Radford's statement is not a factual finding that Van Raam's testimony was inherently incredible.*

Appellant's next contention that the ruling on the admissibility of Miss Radford's statements constituted an implied factual finding that Van

Raam's testimony was inherently incredible is also without any merit and must be rejected.

To begin with, it is elementary that the ruling on the admissibility of evidence is not a factual determination, but purely a legal question (Evid. Code, § 310).[4] ■ Moreover, as the ensuing discussion demonstrates, the ruling of the magistrate was clearly erroneous and Miss Radford's hearsay statements to Agent Miles were properly admissible to show appellant's participation in the criminal conspiracy.

■ In arriving at this conclusion, we first point out that while the hearsay declaration or statement of a coconspirator may not be admitted before the existence of conspiracy has been established by independent evidence (Evid. Code, § 1223;[5] *Laurel* v. *Superior Court* (1967) 255 Cal.App.2d 292, 297 [63 Cal.Rptr. 114]; *People* v. *Hardeman* (1966) 244 Cal.App.2d 1, 39-40 [53 Cal.Rptr. 168]; Witkin, Cal. Evidence (2d ed. 1966) § 521, pp. 492-493), it is well settled that in order to make the coconspirator's hearsay statements admissible under section 1223 of the Evidence Code, only a prima facie case of conspiracy ought to be shown (*People* v. *Steccone* (1950) 36 Cal.2d 234, 238 [223 P.2d 17]; *People* v. *Morales* (1968) 263 Cal.App.2d 368, 375 [69 Cal.Rptr. 402]; *People* v. *MacEwing* (1963) 216 Cal.App.2d 33, 44 [30 Cal.Rptr. 476]).

■ It is likewise well recognized that the very crux of the conspiracy, the evil or corrupt agreement (*People* v. *Marsh* (1962) 58 Cal.2d 732, 743 [26 Cal.Rptr. 300, 376 P.2d 300]; *People* v. *Aday* (1964) 226 Cal.App.2d 520, 523 [38 Cal.Rptr. 199]), may be shown also by circumstantial evidence. Thus, it is not necessary to prove that the parties met and actually agreed to perform the unlawful act or that they had previously arranged a detailed plan for its execution. Rather significantly, *the agreement may be inferred from the conduct of the defendants mutually carrying out a common purpose in violation of a penal statute (People* v.

---

[4] Evidence Code section 310, subdivision (a), provides in part that "*All questions of law* (*including* but not limited to questions concerning the construction of statutes and other writings, *the admissibility of evidence*, and other rules of evidence) *are to be decided by the court.*" (Italics added.)

[5] Evidence Code section 1223, reads as follows: "*Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if:* [¶] (a) *The statement was made by the declarant while participating in a conspiracy to commit a crime* or civil wrong and in furtherance of the objective of that conspiracy; [¶] (b) The statement was made prior to or during the time that the party was participating in that conspiracy; and [¶] (c) *The evidence is offered* either *after admission of evidence sufficient to sustain a finding of the facts specified in subdivisions (a) and (b)* or, in the court's discretion as to the order of proof, subject to the admission of such evidence." (Italics added.)

*Morales, supra*; see also *People* v. *Cockrell* (1965) 63 Cal.2d 659, 667 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Causey* (1963) 220 Cal.App.2d 641, 653 [34 Cal.Rptr. 43]). ■ As the court put it in *People* v. *Morales, supra*, at page 376, the sufficiency of evidence relative to the establishment of a conspiracy must be viewed against the background of the type involved, and " '*If there be knowledge by the individual defendant that he is a participant in a general plan designed to place narcotics in the hands of ultimate users,* the courts have held that *such persons may* be deemed to *be regarded as accredited members of the conspiracy.*' " (Italics added; accord: *United States* v. *Rich* (2d Cir. 1959) 262 F.2d 415, 418.)

■ We believe that the evidence provided by Agent Miles was by itself sufficient to make out a prima facie case of conspiracy under the aforestated rule which made the hearsay statements of Miss Radford admissible against appellant pursuant to Evidence Code section 1223.

In summary, the evidence furnished by Miles showed the following facts: On July 23, 1970, Miles and Miss Radford agreed as to the basic terms of the narcotic transaction at issue. On July 24, 1970, they met at the San Diego Airport in order to fly to San Francisco to obtain the contraband. On the same day Miles observed Miss Radford placing two long distance calls to a telephone which belonged to appellant. On July 25, 1970, Miss Radford and Miles flew together to San Francisco. Appellant was present on their arrival at the San Francisco Airport. Shortly after their disembarcation, Miss Radford left Miles, joined appellant, and the two were seen walking, sitting and talking together. After a brief return to Miles, Miss Radford rejoined appellant and the pair disappeared from Miles' sight. Fifteen-twenty minutes later, Miss Radford returned with the contraband and handed it over to Miles in a white and brown paper bag. From these facts a man of ordinary prudence or caution could reasonably infer that defendant was a knowing participant in a general scheme designed to place narcotics in the hands of the ultimate users and/or that he carried out a common purpose in violation of a criminal statute, and thus a prima facie case of conspiracy was adequately established.

■ But, quite apart from the foregoing, we are firmly convinced that Van Raam's testimony constituted a part of the record and was properly considered by the lower court in sustaining the conspiracy charge against appellant. As appellant himself concedes,[6] if Van Raam's

---

[6]The pertinent part of appellant's brief reads as follows: "For certainly, *taking* VAN RAAM's *testimony into account; the evidence was more than sufficient to establish the*

testimony was rightly admitted, no doubt whatever remained that appellant knowingly participated in the common criminal scheme of selling narcotics and was, therefore, properly chargeable with the offense of conspiracy.

■ In light of our conclusion, appellant's alternative argument, that the charge of conspiracy is not supported by substantial evidence, may be briefly disposed of. His contention is admittedly based on the faulty premise that neither Van Raam's testimony nor Miss Radford's statements to Miles were a proper part of the record. Since we resolved those issues adversely to appellant, his argument must fall of its own weight.

■ Finally, we observe that the failure of the magistrate to admit the proffered testimony of one Westling, who was allegedly sitting in the Jaguar when the contraband was handed over to Miss Radford and who would have allegedly contradicted certain details of Van Raam's testimony (cf. *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304]), did not affect appellant's case in any significant way. As emphasized earlier, the conspiracy charge against appellant would have been sustainable solely upon the testimony of Agent Miles and the statements of Miss Radford. Furthermore, as the magistrate aptly remarked, the proffered testimony would have created but a conflict in the evidence and would not have gone to the heart of the matter.

Judgment affirmed.

Taylor, P. J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 17, 1977.

---

*probable existence of a conspiracy, and the participation of* LIPINSKI *and* RADFORD *in that conspiracy.* The transaction VAN RAAM described clearly established that the sale of contraband to undercover-Agent Miles was a joint venture involving at least RADFORD and LIPINSKI." (Italics added.)