[Crim. No. 31761. Second Dist., Div. One. June 12, 1978.]

In re DAVID B., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
DAVID B., Defendant and Appellant.

**COUNSEL**

Richard B. Lombardi, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Michael Nash, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—The minor appeals from order sustaining petition (§ 602, Welf. & Inst. Code) charging him with forcing the victim to participate in an act of oral copulation and voluntarily acting in concert with another in its commission, and burglary; declaring him a ward of the court; and committing him to California Youth Authority. Each crime was declared to be a felony and the court found to be true each enhancement allegation as pleaded.

Around 8 p.m. the minor's sister came to Mrs. Q.'s home to visit; while they were talking the minor and his brother-in-law knocked on the door; Mrs. Q. opened the door but they entered without her permission; they were drinking beer and brought some into the house; shortly thereafter two girl friends of Mrs. Q. arrived and when the girls left she went outside with them to their car; during this time two cars arrived containing seven adult males, none of whom Mrs. Q. had ever seen before, and walked into her house without her permission and joined the minor; at this time the minor's sister left. The men brought beer and sat around, drank and talked with the minor, whom they called by his first name, and smoked marijuana. Several times Mrs. Q. asked them to leave, and around 11

p.m. after pleading with them to go, they finally did so. After the men left, she went to bed in a bedroom where her three children were sleeping; shortly thereafter she heard a noise, left her room to investigate, was struck and fell to the floor; a man threw himself on top of her trying to remove her clothing and told her not to do anything and he would try to help her; he told her "Do you want all the men that are outside to be with you?" and said if she would submit to him the others outside would not harm her; she told him no and started to fight him but he forced her to remove her clothing, threw her on the floor and sexually assaulted her whereupon the other males, including the minor, entered. Mrs. Q. was removed to the living room and all but the minor's brother-in-law sexually abused her, but he watched and laughed and hit her. During this time while the men "fought for their turn," the minor was standing around "drinking and waiting for his turn."

In all, eight males sexually assaulted Mrs. Q.; the minor was the fourth male to do so; he grabbed her, threw her against the wall, hit her in the face, took her arm and threw her to the floor then fondled her, forced her to commit an act of oral copulation by grabbing her head by the hair and forcing her head down until he tired then had intercourse with her. After this four other males sexually abused her. During these events the men threatened her and told her they would kill her if she told police; the minor made no threats but was present when they were made. When they left they took all of the meat and food Mrs. Q. had bought that day, an electric pot, electric can opener, toaster and her food stamps.

In his defense, the minor admitted he and his sister and brother-in-law had been in Mrs. Q.'s home for an hour or so but he left, went to the park, met a girl and stayed with her until 1 a.m.; he denied he returned to Mrs. Q.'s house or committed any of the acts of which he is accused.

■ Premised on the theory that the statements made by the first male[1] to Mrs. Q. out of appellant's presence constituted inadmissible hearsay he cites as error the court's failure to strike her testimony that the man told her not to do anything and he would try to help her, asked her "Do you want all the men that are outside to be with you?" and said if she submitted to him none of the others outside would harm her. She also testified that using force and violence the man then proceeded to commit

---

[1]The first male to enter Mrs. Q.'s bedroom and sexually assault her is not identified in the record by name but it is evident that he was one of eight men who had been with the minor in Mrs. Q.'s house shortly before, and was the one who entered the house through the bathroom window and admitted the others.

on her various acts of sexual abuse followed by two or three of the other men who did the same during which the minor was present "drinking and waiting his turn while they all fought for their turn." The man's statements to Mrs. Q. were admissible under the coconspirator exception to the hearsay rule (§ 1223, Evid. Code.)[2]

Enhancement allegations charged the minor with compelling the participation of the victim in an act of oral copulation with force and violence, and with voluntarily acting in concert with others in the commission of the offense; but the petition did not allege a conspiracy. However, the admissibility of the challenged statements is not affected by the fact that no conspiracy was charged. (*People* v. *Morales,* 263 Cal.App.2d 368, 374 [69 Cal.Rptr. 402]; *People* v. *Duran,* 57 Cal.App.2d 363, 371 [134 P.2d 305].) ■ Although the hearsay statements of a coconspirator may not be admitted before the existence of a conspiracy has been established (§ 1223, Evid. Code), the court in its discretion may permit the statements to be received first, subject to the establishment of the existence of a conspiracy by independent evidence. (§ 1223, subd. (c), Evid. Code; *People* v. *Calhoun,* 50 Cal.2d 137, 144 [323 P.2d 427].) Moreover, "The foundational requirement may be met without establishing a conspiracy beyond a reasonable doubt or even by a preponderance of the evidence; only prima facie evidence of the fact is required. (*People* v. *Steccone* (1950) 36 Cal.2d 234, 238 [223 P.2d 17].)" (*People* v. *Earnest,* 53 Cal.App.3d 734, 741 [126 Cal.Rptr. 107]; *People* v. *Lipinski,* 65 Cal.App.3d 566, 575 [135 Cal.Rptr. 451]; *People* v. *Morales,* 263 Cal.App.2d 368, 375-376 [69 Cal.Rptr. 402].)

■ Existence of a conspiracy may be proved by circumstantial evidence, and the sufficiency of the evidence offered to establish such conspiracy must be viewed against the background of the type involved. (*People* v. *Lipinski,* 65 Cal.App.3d 566, 576 [135 Cal.Rptr. 451].) In our view the evidence provided by Mrs. Q. and all of the inferences favorable to the People that the trier of fact could reasonably draw therefrom were sufficient to establish the foundational fact of conspiracy to sexually attack Mrs. Q., independent of the statements made by the first man.

[2]Evidence Code section 1223 provides: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if: [¶] (a) The statement was made by the declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of that conspiracy; [¶] (b) The statement was made prior to or during the time that the party was participating in that conspiracy; and [¶] (c) The evidence is offered either after admission of evidence sufficient to sustain a finding of the facts specified in subdivisions (a) and (b) or, in the court's discretion as to the order of proof, subject to the admission of such evidence."

Earlier in the evening the minor, with whom Mrs. Q. was acquainted, came to her home with his brother-in-law bringing beer, and entered without her permission. Thereafter while she was outside, seven or eight adult males whom she had never seen before but who obviously were friends of the minor, arrived in two cars and entered without her permission; when she returned to her house the minor was sitting on the floor talking and drinking with the others and the other males "called him by his name and they laughed together"; they all drank beer and smoked marijuana cigarettes. She asked them to leave but they would not do so; again she pleaded with them to leave, and finally they all left together. Shortly thereafter they returned; the house was locked but entry was made by one of them climbing through the bathroom window and he admitted the others; in light of the circumstances it is reasonable to assume that it was he who struck down Mrs. Q. as she investigated the noise, threw her to the floor, disrobed her and sexually assaulted her; during this time she was aware others were in the next room where a light was on, and she heard noises and could see shadows, and the others, including the minor, came in, waited, drank beer and "fought for their turn"; the minor stood around drinking and "waited for his turn," too, and eight men including the minor sexually abused her; they all left together taking various items from the house.

The man's statements to Mrs. Q. were offered to show that he was connected with the eight men, including the minor, outside, they were all acting in concert with each other and he used their immediate presence as a method of intimidating her into submission; and his statements were made while he was participating in a conspiracy to sexually assault Mrs. Q. in furtherance of that conspiracy and during the time the minor was also participating therein. All requirements for the coconspirator admission hearsay exception were satisfied.

Mrs. Q. testified that the minor was the fourth male to sexually assault her; he grabbed her, threw her against the wall, hit her in the face, threw her on the floor, forced her to participate in an act of oral copulation and "violated me sexually." Asked by the prosecutor what she meant by that, she answered "He had sex with me." Over objection that it was irrelevant and immaterial, she described his conduct including the act of oral copulation here charged. Appellant's contention that "He had sex with me" should have been stricken as irrelevant is unsupported by any argument or citation of meaningful authority. The testimony of Mrs. Q. shows the sexual activities of the minor from the time he threw her to the floor to the time the other three or four males attacked her. These acts

constituted a continuous course of conduct consisting of fondling her, forcing upon her an act of oral copulation and having sexual intercourse with her. This "sex" was part of a continuous and unbroken course of conduct so intimately connected with the crime charged that it was proper to permit its admission in evidence. (See *People* v. *Ford,* 81 Cal.App.2d 580, 583 [184 P.2d 524].)

We have carefully examined the entire record in this case and there is manifest no error.

The order is affirmed.

Wood, P. J., and Hanson, J., concurred.