[No. A065205. First Dist., Div. Three. Apr. 26, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ALFONSO LONGINES, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part III.

Ozro William Childs, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Laurence K. Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MERRILL, J.**—Appellant Alfonso Longines appeals from his conviction of sale of marijuana and use of a minor to sell marijuana. (Health & Saf. Code, §§ 11360, subd. (a), 11361, subd. (a).) We affirm.

### I.

### FACTUAL BACKGROUND

Napa County Sheriff's Deputy James Clark was working undercover on a drug investigation in St. Helena. A confidential informant introduced Deputy Clark to a minor, 15-year-old Matt C., who was accompanied by a person introduced as Treavor. Deputy Clark informed them of his desire to buy some marijuana.

After Matt C. and Treavor departed, Deputy Clark and the informant drove to a nearby Safeway parking lot. About five minutes later, Matt C. and Treavor arrived on foot. Matt C. told Deputy Clark that he needed the money first, and then would bring the marijuana. Matt C. asked how much marijuana he wanted. Deputy Clark inquired about the price, and Matt C. responded that it was $30 for an eighth of an ounce. Deputy Clark told him that he wanted an ounce, which Matt C. said would cost $120.

A yellow car pulled up and Matt C. got in, saying he would be "back in a little bit." Another narcotics agent, Douglas Pike, was working with Deputy Clark and attempted to follow the yellow car as it drove out of the Safeway parking lot. Pike located the yellow car across from Lyman Park, a short distance from the Safeway parking lot. Pike observed Matt C. meet with appellant in the park for about five minutes. Appellant then walked away, and Pike observed him making a telephone call at a pay phone. Appellant returned to the park, then went to an area by some railroad tracks near the Safeway parking lot. There he searched the bushes, picked up an object, and walked to a fence by the Church Street park.

When Matt C. returned to the Safeway parking lot he told Deputy Clark that he wanted the money up front. Deputy Clark responded that he did not want to give him the money first because he had been "ripped off" in the past. Matt C. said that he would try to "do the transaction" with his supplier in front of Clark's vehicle so that Clark could observe it. Matt C. told Deputy Clark to take Treavor and drive to a parking lot by the Church Street park.

When Deputy Clark arrived at the parking lot near the Church Street park, Matt C. approached the vehicle and told him that the price was now only $100 for the marijuana. He also told Deputy Clark about the way the transactions usually occurred. He stated that he usually took the money and put it on a picnic table in the park, and that appellant would walk by and drop a bag of marijuana in the bushes. Matt C. also said that appellant was not very trustworthy, and that if he was given the money up front he would attempt to "rip you off." He then said he wanted the money and was going to go into the park. Deputy Clark protested that he would not be able to see the transaction from the parking lot, so Matt C. said "well, then come with me."

Matt C. and Deputy Clark walked through the park to the other side of a small fence, where appellant was standing by some railroad tracks. Matt C. introduced Deputy Clark to appellant, who asked: "Do you know this guy?" Matt C. said: "Yes. He's a friend of a friend." Appellant then held out a bag and Deputy Clark took it. He opened the bag and smelled what appeared to be marijuana. He then gave appellant $100. Afterwards, Matt C. asked Deputy Clark for a "bud" of the marijuana. Deputy Clark told him that he would compensate him sometime in the future for his efforts.

## II.

### DISCUSSION

A.  *Admissibility of Matt C.'s Statements*

█  Appellant contends that the court erred in allowing Deputy Clark to testify regarding five out-of-court statements made by Matt C. He maintains that the statements were inadmissible hearsay.

The five statements to which appellant objects are the following: (1) "He tells me that once again, he wants the money up front. [¶] I tell him no, and he says that we can try to—he can try to do the transaction in front of my vehicle with his supplier so that I can watch it happen." (2) "[The minor] starts discussing the marijuana again; tells me that he's knocked twenty dollars off the price and it will now cost me a hundred dollars for the marijuana." (3) "He says that the way the transactions usually occur, he takes the money and he places the money onto a picnic table in this small park and Smiley [appellant] . . . will walk by and drop the bag of marijuana into the bushes. At that time [the minor] will go over and pick up the bag of marijuana. [¶] He also told me that Smiley is not the most trustworthy guy and that if you give him the money up front that he will rip you off or he will try to rip you off." (4) "[The minor] says that I have knocked twenty dollars off the price and now it's a hundred dollars for the ounce and he wanted the money up front." (5) "He referred to the defendant as Smiley."

Respondent maintains that the statements were admissible either under the coconspirator statement exception to the hearsay rule set forth in Evidence Code section 1223, or because they were not offered for the truth of the matter stated and therefore are not hearsay. Section 1223 provides: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if: [¶] (a) The statement was made by the declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of that conspiracy; [¶] (b) The statement was made prior to or during the time that the party was participating in that conspiracy; and [¶] (c) The evidence is offered either after admission of evidence sufficient to sustain a finding of the facts specified in subdivisions (a) and (b) or, in the court's discretion as to the order of proof, subject to the admission of such evidence."  █  A conspiracy is shown by "evidence of an agreement between two or more persons with the specific intent to agree to commit a public offense and with the further specific intent to commit such offense, which agreement is followed by an overt act committed by one or more of the parties for the purpose of furthering the object of the

agreement." (*People* v. *Superior Court* (*Quinteros*) (1993) 13 Cal.App.4th 12, 20 [16 Cal.Rptr.2d 462].)

■ Appellant argues that Matt C. and appellant were not coconspirators, but that Matt C. was an "independent contractor," and that there was "no evidence of any pre-existing agreement between [Matt C.] and Longines to sell marijuana" or of "an implicit plan to further distribute the substance."

Appellant misconstrues the evidence needed to permit the trial court to admit evidence under the coconspirator's exception. "Only prima facie evidence of a conspiracy is required to permit the trial court to admit evidence under the coconspirator's exception. This fact need not be established beyond a reasonable doubt, or even by a preponderance of the evidence. [Citation.] The conspiracy may be shown by circumstantial evidence and 'the agreement may be inferred from the conduct of the defendants mutually carrying out a common purpose in violation of a penal statute.' " (*People* v. *Olivencia* (1988) 204 Cal.App.3d 1391, 1402-1403 [251 Cal.Rptr. 880], citing *People* v. *Lipinski* (1976) 65 Cal.App.3d 566, 575 [135 Cal.Rptr. 451].)

We have no argument with appellant's position that the conspiracy must be independently proved. It cannot be overlooked, however, that the proof may be by circumstantial evidence. In the case at bench the conspiracy and its objectives were established by the conduct and statements of the participants without reference to the claimed hearsay statements. Matt C. told Deputy Clark that he could get him some marijuana. He left, and was observed having a five-minute conversation with appellant in the park. Matt C. returned to Deputy Clark, and told him to go to a parking lot by the Church Street park. Matt C. met Deputy Clark in the parking lot and brought him to appellant. Matt C. introduced Clark to appellant, who asked Matt C.: "Do you know this guy?" Matt C. responded that Clark was "a friend of a friend." Clark then gave appellant $100, and appellant handed him a "ziplock" bag containing 21.2 grams of marijuana. The sequence of events provides compelling evidence that Matt C. and appellant were working together, each performing a different and essential function in bringing the sales transaction to a successful conclusion. To the extent that any of Matt C.'s statements were offered for the truth of the matter stated, the court did not err in admitting them pursuant to the coconspirator exception to the hearsay rule.

B. *Use of a Minor to Sell Narcotics*

■ Appellant urges that the evidence is insufficient to support his conviction of use of a minor to sell marijuana, pursuant to Health and Safety

Code section 11361, subdivision (a). Section 11361 provides in part that: "Every person . . . who hires, employs, or uses a minor in unlawfully . . . selling . . . or peddling any marijuana . . . shall be punished." Appellant contends that only "employment" of a minor to sell marijuana is prohibited, not the use of the minor who is an "independent contractor." He contends that the word "use" in the statute "connotes some form of employment." Appellant then concludes that appellant did not "employ" the minor because the evidence did not establish any agreement or understanding that the minor would be compensated by appellant for the minor's involvement in the transaction. We find this analysis unpersuasive.

In interpreting a statute, we look first to the words of the statute itself. Section 11361 makes it unlawful to "hir[e], emplo[y], or us[e]" a minor in selling or peddling marijuana. It is the legal intendment that each clause has been inserted for some useful purpose, and when rightly understood has some practical operation, and every word should be given some significance, leaving no part useless or devoid of meaning. (*People* v. *Zolotoff* (1941) 48 Cal.App.2d 360, 364 [119 P.2d 745].) "An interpretation of a statute which would render some terms surplusage should be avoided." (*People* v. *Trimble* (1993) 16 Cal.App.4th 1255, 1259 [20 Cal.Rptr.2d 495].) Nothing in the statute suggests that "use" is synonymous with "employ." Had the Legislature intended such a result, it easily could have omitted the word "use," rather than prohibiting employment *or* use in the disjunctive. (See *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].)

Whether or not the minor was actually "employed" by appellant, there is substantial evidence that appellant used the minor to peddle or sell marijuana. After Matt C. told Deputy Clark that he could get him an ounce of marijuana, Agent Pike observed Matt C. meet in the park with appellant for about five minutes. Matt C. then met Deputy Clark and told him that the price of the marijuana had been reduced. Matt C. brought Deputy Clark to appellant, who asked Matt C. if he "knew this guy." When Matt C. responded that he was a friend of a friend, appellant handed a bag of marijuana to Deputy Clark in exchange for $100. Substantial evidence supports appellant's conviction of use of a minor to sell marijuana.

### III.

#### DISCLOSURE OF CONFIDENTIAL INFORMANT*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 621.

## IV.

### DISPOSITION

The judgment is affirmed.

Chin, P. J., and Corrigan, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 19, 1995.