[Crim. No. 8915. First Dist., Div. Two. Aug. 11, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES HUBERT FARLEY, Defendant and Appellant.

216

COUNSEL

Elmer M. Ballard, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Robert R. Granucci and James B. Cuneo, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KANE, J.**—Charles Hubert Farley appeals from a judgment entered following nonjury trial convicting him of selling and possessing marijuana and selling LSD.

In mid-October 1966, Michael Waltmon, operating under direction of the state Bureau of Narcotic Enforcement ("Bureau"), became acquainted

with appellant. After discussing the possibility of selling narcotic items to Waltmon, appellant showed him quantities of marijuana, LSD, and various pills.

On December 7, 1966, by prearrangement, Waltmon and Bureau Agent Melvin Cozzalio met appellant and an acquaintance, Terrance Esser, at a roadside restaurant in Vallejo. In the restaurant parking lot Waltmon entered appellant's vehicle and for $180 purchased from him a sack, later determined to contain 64.8 grams of marijuana and 50 capsules of LSD.

The same parties again met by prearrangement at the restaurant on December 15, 1966. During the course of discussion in the restaurant cocktail lounge, appellant and Waltmon who had been furnished $390 of state money left together, returning approximately 25 minutes later. At this point the four men went outside to appellant's vehicle from which appellant removed a brown paper bag which he handed to Waltmon. Waltmon in turn delivered it to Agent Cozzalio. The contents of the bag contained 384.5 grams of marijuana and 100 capsules of LSD.

Finally, after a series of telephone conversations with appellant, Agent Cozzalio arranged to meet him at another Vallejo roadside restaurant on the evening of December 30, 1966. After a brief discussion in the restaurant's cocktail lounge, they proceeded to appellant's vehicle, where Cozzalio handed appellant $620 and received in return what was later determined to be 5 pounds 13½ ounces of marijuana, .42 grams of hashish and 50 capsules of LSD. By prearranged signal, appellant was then arrested. A cigarette was discovered in appellant's jacket which was later determined to contain marijuana.

### Dismissal of Charges Omitted From Commitment Order

By means of two complaints containing a total of seven counts, appellant, together with Esser, was charged with sale of marijuana and LSD on December 7, December 15, and December 30, 1966. He was also charged with possession of marijuana on December 30, 1966. At the conclusion of the preliminary hearing, the magistrate ordered appellant and Esser held to answer for the transactions occurring on December 15 and 30, but ordered that both counts respecting the transaction of December 7 be dismissed. In so doing, the magistrate stated, "I just feel, after the hearsay is stricken, the evidence that goes to those is insufficient," and made the following finding: "With reference to count 1 and count 2, which refer to the transaction as alleged to have occurred on December 7, 1966, I will make a finding that there is not reasonable and probable cause with reference to those sections and order that they be dismissed." This dismissal was reflected in the commitment order signed by the magistrate.

Nevertheless, the information filed against appellant and Esser contained counts accusing them of selling marijuana and LSD on December 7, 1966. Appellant's motion to dismiss those counts, pursuant to Penal Code section 995, was denied. After nonjury trial, appellant was convicted of all counts charged.

▮ Appellant now contends that inclusion in the information of the same accusations which were expressly dismissed by the committing magistrate renders those portions of the information invalid. Respondent argues that Penal Code section 739 and cases interpreting it authorize inclusion of such charges in the information.

Our resolution of this issue is aided by the rationale of a recent unanimous decision of the state Supreme Court. In *Jones* v. *Superior Court* (April 27, 1971) 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241], the court reviewed the judicial analysis of the potential conflict between section 8 of article I of the California Constitution[1] and Penal Code section 739[2] and concluded the rule to be that "an information which charges the commission of an offense not named in the commitment order will not be upheld unless (1) the evidence before the magistrate shows that such offense was committed (Pen. Code, § 739) and (2) that the offense 'arose out of the transaction which was the basis for the commitment' on a related offense. [Citations.]" (Pp. 664-665.)

In *Jones* the defendants were charged by a complaint with the offenses of rape, oral copulation and sodomy. At the conclusion of a three-day full-scale preliminary hearing at which the defendants testified, the magistrate made findings of fact to the effect that the victim consented to intercourse and that neither oral copulation nor sodomy had taken place.[3] Those

[1] "Sec. 8. Offenses heretofore required to be prosecuted by indictment shall be prosecuted by information, after examination and commitment by a magistrate, . . . ."

[2] Section 739: "When a defendant has been examined and committed, as provided in Section 872, it shall be the duty of the district attorney of the county in which the offense is triable to file in the superior court of that county within 15 days after the commitment, *an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed.* The information shall be in the name of the people of the State of California and subscribed by the district attorney. [Added Stats. 1951, ch. 1674, p. 3831, § 6.]" (Italics added.)

[3] The magistrate said: " 'Well, after listening for three different days to this, I believe that the girl went with them willingly for the purpose of having sexual intercourse in the mountains. I believe that that's why the two Defendants went; that the firing of the guns was incidental and provided a vehicle or an excuse for going. I don't believe there were any handcuffs there. I don't believe there was any force used upon the girl, and I didn't even suspect that it was used.

" 'I don't believe that 288(a) [oral copulation] took place. I don't believe that 286 [sodomy] took place.' " (Pp. 663-664.)

counts were dismissed, but the defendants were held to answer to the charge of "statutory" rape which, although not charged in the complaint, was shown by the evidence.

Thereafter the district attorney filed an information containing the original charges, i.e., rape, oral copulation and sodomy. It did not, however, charge "statutory" rape.

A denial of the defendants' motion to set the information aside under Penal Code section 995 prompted the petition for a writ of prohibition. In granting prohibition, the Supreme Court speaking through Justice Burke made it clear that the pivotal reason for its decision was that the magistrate had made "material factual findings" which negated any possible conclusion that the offenses charged had, in fact, been committed.

However, the court in *Jones* affirmed its earlier decisions, as well as Court of Appeal opinions holding that a magistrate's legal conclusion that "the evidence failed to show probable cause that the offense had been committed" can be challenged by the district attorney by means of including additional charges in the information so long as that challenge is made "within the context of the magistrate's findings on the evidence." (*Jones* v. *Superior Court, supra,* at pp. 665-666.)

From the foregoing rationale we perceive the practical rule to be that in cases where the magistrate makes factual findings which are fatal to the asserted conclusion that a particular offense was committed, the district attorney may not recharge that offense in the information. A clear example of this would be where the magistrate expresses disbelief of a witness whose testimony is essential to the establishment of some element of the corpus delicti.

Where, however, the magistrate either expressly or impliedly accepts the evidence and simply reaches an ultimate legal conclusion therefrom— i.e., whether or not such evidence adds up to reasonable cause that the offense had been committed—such conclusion is open to challenge by inclusion in the information which action is thereafter subject to attack in the superior court under Penal Code section 995, and ultimately to appellate review.

In the case at bench the magistrate did not make factual findings. Rather, he concluded generally that the "evidence . . . is insufficient" and that the lack of direct evidence of a sale on December 7, 1966, placed him in the position of speculating. We have carefully reviewed the transcript of the preliminary hearing and have concluded that the magistrate was in error in finding a lack of reasonable and probable cause that the

offenses alleged in counts I and II had been committed on December 7, 1966.

█ The evidence at the preliminary hearing shows that Agent Cozzalio and Waltmon met at the agent's Sacramento office on December 7, 1966, at which time Waltmon was strip-searched to verify that he had neither money nor contraband on his person. He was then supplied money by the agent with whom he drove to the Vallejo restaurant rendezvous where, while being observed by Agent Cozzalio, he entered appellant's automobile. Appellant moved his car next to the agent's car which appellant and Waltmon then entered. After some discussion Waltmon and appellant returned to the latter's vehicle. Waltmon then came back to Cozzalio's vehicle, obtained some additional money from the agent, returned to appellant's car and once more came back to the agent from whom he got an additional $5. Waltmon then went back to appellant's vehicle, returned again to Cozzalio and handed the agent two tinfoil-wrapped packages and some capsules later identified as containing marijuana and LSD respectively. Waltmon was strip-searched again—the results confirming he had neither money nor contraband on his person.

This summary of the evidence amply supports the charges of sale of marijuana (count I) and sale of LSD (count II) on December 7, 1966. █ Probable cause is established if a man of ordinary caution or prudence would be led to believe and conscientiously entertain a strong suspicion of a person's guilt. (*Taylor* v. *Superior Court* (1970) 3 Cal.3d 578, 582 [91 Cal.Rptr. 275, 477 P.2d 131].)

█ The record also reflected the prior discussions between appellant and Waltmon, display of samples of marijuana, LSD and other pills by appellant to Waltmon, as well as the fact that the December 7 meeting was prearranged for the precise purpose of a sale. Added to this evidence are the subsequent transactions on December 15 and December 30, 1966, each of a similar nature to that of December 7, 1966. The magistrate expressed concern because there were two occupants (appellant and Esser) in appellant's car at the time of the alleged sale on December 7, 1966, and that he could not determine which might be guilty.[4] This concern was unnecessary since the circumstantial evidence is clearly sufficient to implicate both occupants under the probable cause standard of "strong suspicion of guilt." Furthermore, in view of the prior negotiations between Waltmon and appellant we conclude that a man of ordinary prudence would be led to be-

---

[4]"There are two occupants in the car. What was said, what was done within that car that constituted a sale, I have no way of knowing and you [the prosecuting attorney] have no way of knowing based on the evidence here. I don't think it's for the Court to speculate. One or the other could have been involved in the sale. I think that this has to be proved by affirmative proof."

lieve that the sale was more likely made by appellant and that Esser was an accomplice. Even if the sale were made by Esser, however, the evidence was clearly sufficient to conclude that appellant was an accomplice and therefore chargeable as a principal.

### Multiple Punishment

 The trial court imposed sentences upon all seven counts, but suspended execution of all sentences other than the three counts of sale of marijuana. The suspended sentences were ordered to become permanently stayed upon completion of the imposed sentences, which were ordered to be served concurrently.

Appellant claims that this sentencing procedure constitutes multiple punishment in violation of Penal Code section 654. A long and consistent line of authority directly refutes this contention. (See *People* v. *Du Bose* (1970) 10 Cal.App.3d 544, 551 [89 Cal.Rptr. 134], hg. den., and cases cited.) Appellant concedes the existence of this precedent, but asks us to reach a contrary result. We see no reason to do so. The simple fact is that Penal Code section 654 is a proscription against *multiple punishment* but not multiple convictions (see *In re Wright* (1967) 65 Cal.2d 650, 653 [56 Cal.Rptr. 110, 422 P.2d 998]). Thus, since appellant was properly convicted of multiple offenses the trial court was faced only with the task of avoiding multiple punishment in its sentencing activity. This has manifestly been accomplished in the case at bar and appellant has not shown—nor can he show—that he has been subjected to multiple punishment.

### Sufficiency of Evidence of Narcotic Substances Sold by Appellant

 Appellant contends the record contains insufficient evidence to prove that the substance he sold was, in fact, LSD. Specifically appellant challenges the reliability of the testing procedures employed by the Bureau chemist in support of his testimony at trial that the substances were LSD, the credibility of the chemist's testimony in view of inconsistencies between his testimony at the preliminary hearing and at trial, and the veracity of the chemist's opinions at trial in view of the results of a fluorescent test he described at the preliminary hearing.

These criticisms are unwarranted. At trial counsel for appellant stipulated that the Bureau chemist was qualified as an expert in the field of analysis and identification of narcotics. The chemist testified that he employed three color tests and the fluorescent test to determine that the substances were LSD. That the chemist's testing procedures were "in a stage

of fluctuation" at the time he used them and that certain inconsistencies appeared in his testimony at trial were factors suitable for consideration by the trial court, as were the offsetting facts that the chemist used at least four separate tests, that a lengthy delay occurred (on account of appellant's failure to appear) between the preliminary hearing and the trial, and that the chemist testified at trial that the reading of the fluorescent test appropriately indicated LSD.

The trial court thoroughly reviewed the present objections raised against the chemist's testimony and the conflicting views of a defense witness. In these circumstances the testimony of the Bureau chemist, a qualified expert, respecting the results of his chemical analyses, provided ample evidence that the substance sold by appellant constituted the restricted dangerous drug LSD. (See *People* v. *Chrisman* (1967) 256 Cal.App.2d 425, 431-434 [64 Cal.Rptr. 733], cert. den. 395 U.S. 985 [23 L.Ed.2d 774, 89 S.Ct. 2135]; *People* v. *Galfund* (1968) 267 Cal.App.2d 317, 320-321 [72 Cal.Rptr. 917]; cf. Witkin, Cal. Evidence (2d ed. 1966) § 652, p. 614.)

*Entrapment*

■ Appellant contends the record contains sufficient evidence of entrapment to place the burden of proving its absence upon the prosecution. The rule is clear in California, however, that entrapment is an affirmative defense which a defendant has the burden of proving by a preponderance of the evidence. (*People* v. *Moran* (1970) 1 Cal.3d 755, 760 [83 Cal.Rptr. 411, 463 P.2d 763].)

■ Nor is appellant's contention that entrapment is established as a matter of law supported by the record. On the contrary the record indicates the absence of entrapment as a matter of law.

■ The determining factor in an inquiry regarding entrapment is the origin of intent to commit the crime. Ingenuity and initiative on the part of law enforcement personnel who have the burdensome task to detect and arrest narcotic traffickers should not be confused with the concept of intent. As pointed out by former Chief Justice Traynor in his dissenting opinion in *People* v. *Moran, supra,* at page 765: "To enforce laws against such activities, an officer often must become a seemingly willing participant in crime. . . . In the case of traffic in narcotics, law-abiding citizens would not ordinarily be seduced into becoming involved in such traffic by an officer's offer to purchase them."

■ In the case at bench we have a classic example of the all too frequent frivolous assertion of the defense of entrapment. Appellant showed Waltmon several types of narcotics at his residence; he told Waltmon he

had been dealing in narcotics for at least 10 years, and he thereafter sold substantial quantities of narcotics to Waltmon and Cozzalio on three separate occasions. This suggests only one conclusion, namely, that the intention to sell the contraband originated in appellant's mind.

### Admission of Extrajudicial Statements

Appellant contends that unspecified evidence of his admissions should have been excluded pursuant to his objections at trial on the ground that he was entitled to be advised of his constitutional rights "following his first meeting with Waltmon." Appellant does not allege that any of the statements were made subsequent to his being taken into custody (cf. *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758]), being detained at the scene of his arrest (cf. *People* v. *Ceccone* (1968) 260 Cal.App.2d 886 [67 Cal.Rptr. 499]), being arrested, or being indicted (cf. *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199]). Rather, the record demonstrates that appellant's statements were made prior to and during commission of the offenses and not as a result of the type of custodial interrogation prior to which the *Miranda* warnings were intended to be given. (*People* v. *Mabry* (1969) 71 Cal.2d 430, 440-441 [78 Cal.Rptr. 655, 455 P.2d 759]; *People* v. *Putty* (1967) 251 Cal.App.2d 991, 997 [59 Cal.Rptr. 881]; *People* v. *Sogoian* (1965) 232 Cal.App.2d 430, 434 [42 Cal.Rptr. 736].)

The judgment is affirmed.

Shoemaker, P. J., and Taylor, J., concurred.