[Civ. No. 48425. First Dist., Div. One. June 17, 1980.]

VERNON GEORGE WALKER, Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

James C. Hooley, Public Defender, Jay B. Gaskill and Lawrence A. Boxer, Assistant Public Defenders, for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and John W. Runde, Deputy Attorneys General, for Real Party in Interest.

OPINION

**RACANELLI, P. J.**—Following denial of his motion to set aside an information charging him with the murder of Gary Charles Watson, petitioner seeks prohibition (or mandamus) enjoining prosecution on said charge. For the reasons which follow we have concluded that the requested relief should be granted and that proceedings be resumed against petitioner solely on the charge of manslaughter (Pen. Code, § 192) as reflected in the magistrate's order of commitment.

The evidence before the magistrate consisted of stipulated testimony of the cause of death (a gunshot wound to the head) and petitioner's tape-recorded statement.[1] The statement reveals in pertinent part that petitioner, owner of an East Oakland liquor store, had known the victim for several years as a trouble maker involved in alcohol and drug abuse. On the night of the shooting, petitioner was counting his weekend receipts, his hand gun laying alongside, when the victim entered the store and an argument soon erupted. As the victim left, he made an explicit threat to kill petitioner. Shortly thereafter, an undescribed object was hurled through the store front plate glass window followed by the victim's return into the store where he renewed his threat to kill the now frightened owner. Seizing his weapon, petitioner ran from behind the counter towards the victim who quickly turned to run from the store while reaching under his coat as though he were pulling something from his waistband. Petitioner reacted by firing the weapon at the victim as the latter fled into the street. One of four shots ultimately struck and felled the fleeing victim. Petitioner then dragged the mortally wounded victim by his arms back into the store since he had been previously told by a police official that such incidents were to be confined within the business establishment.[2] Petitioner thereafter summoned the police who arrived to find the victim lying face down apparently with a butcher

---

[1] For some unknown reason, none of the three other persons at the scene of the shooting were called as witnesses.

[2] Another reason advanced by petitioner was his desire to avoid an anticipated crowd scene.

knife in his right hand and a loaf of bread between his outstretched arms, neither of which petitioner recalled seeing. Petitioner stated he shot the victim acting under a belief that his life was in jeopardy, a fear magnified through his awareness of the recent murder of a fellow shopkeeper during an armed robbery. Petitioner further stated his growing fear of life-threatening violence had compelled a decision to sell his business at a considerable loss.

Based upon such evidence the magistrate, while expressing uncertainty as to whether a complete self-defense had been shown, thereafter made specific findings that: 1) petitioner knew of the victim's bad reputation; 2) the victim threatened to kill petitioner and had engaged in aggressive conduct directed at petitioner; and 3) petitioner was in fear for his personal safety. Upon articulating those facts the magistrate ultimately determined that "there was sufficient provocation to rebut the presumption. . .of malice" and held petitioner to answer for the lesser crime of manslaughter. The dispute centers on the nature of that final determination.

Petitioner argues that the findings made constituted factual determinations fatal to the charge of murder precluding the filing of an information charging the greater offense. (See *Jones* v. *Superior Court* (1971) 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241]; see also *Roads* v. *Superior Court* (1969) 275 Cal.App.2d 593 [80 Cal.Rptr. 169]; *People* v. *Garcia* (1968) 265 Cal.App.2d 94 [71 Cal.Rptr. 102].) Real Party counters that the characterized finding of sufficient provocation to rebut the inference of malice was merely a legal *conclusion* entitling the prosecution to challenge the magistrate's ultimate determination by including the murder charge in the information. (See *Dudley* v. *Superior Court* (1974) 36 Cal.App.3d 977 [111 Cal.Rptr. 797]; see also *Parks* v. *Superior Court* (1952) 38 Cal.2d 609 [241 P.2d 521]; *People* v. *Bird* (1931) 212 Cal. 632 [300 P. 23]; *People* v. *Eitzen* (1974) 43 Cal.App. 3d 253 [117 Cal.Rptr. 772]; *People* v. *Farley* (1971) 19 Cal.App.3d 215 [96 Cal.Rptr. 478].)

I.

■ The purpose of the preliminary hearing before a committing magistrate is to determine whether there is sufficient or probable cause to believe the defendant guilty of a public offense (*People* v. *Uhlemann*

(1973) 9 Cal.3d 662, 667 [108 Cal.Rptr. 657, 511 P.2d 609]), and "to weed out groundless or unsupported charges of grave offenses,..." (*People* v. *Elliott* (1960) 54 Cal.2d 498, 504 [6 Cal.Rptr. 753, 354 P.2d 225].) In performing this adjudicatory function, it is the magistrate's duty to weigh the evidence, resolve any conflicts and to determine the credibility of witnesses. (*Jones* v. *Superior Court, supra,* 4 Cal.3d at p. 667.) ■ On review, such factual determinations where supported by the evidence may not be disturbed. (See *Caughlin* v. *Superior Court* (1971) 4 Cal.3d 461, 464-465 [93 Cal.Rptr. 587, 482 P.2d 211]; *People* v. *Hall* (1971) 3 Cal.3d 992, 996 [92 Cal.Rptr. 304, 479 P.2d 664]; *Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]; *Birt* v. *Superior Court* (1973) 34 Cal.App.3d 934, 938 [110 Cal.Rptr. 321].) ■ However, where credible evidence would support a finding of guilt of a chargeable offense, that offense may be added to the information by the prosecutor even though the magistrate had concluded that no probable cause exists that such offense had been committed. (See Pen. Code, § 739; *Parks* v. *Superior Court, supra,* 38 Cal.2d at pp. 613-614; *People* v. *Bird, supra,* 212 Cal. at pp. 644-645; *Dudley* v. *Superior Court, supra,* 36 Cal.App.3d at p. 983.) But if the *factual findings* made by the magistrate are "fatal to the asserted conclusion that a particular offense was committed," that offense may not be included in the information. (*People* v. *Farley, supra,* 19 Cal.App.3d at p. 221.) Thus, whether the prosecutor may successfully challenge the magistrate's conclusion that probable cause exists limited to a designated offense by inclusion of another charge, must be determined "within the context of the magistrate's [material] findings on the evidence." (*Jones* v. *Superior Court, supra,* 4 Cal.3d at p. 666.)

II.

Malice, express or implied, is of course an essential ingredient of the crime of murder. (Pen. Code, §§ 187-188.) ■ "When the killing is proved to have been committed by the defendant, *and nothing further is shown, the presumption of law is that it was malicious and an act of murder;...*" (*Jackson* v. *Superior Court* (1965) 62 Cal.2d 521, 525 [42 Cal.Rptr. 838, 399 P.2d 374]; italics added in part.) Moreover, where the homicide results from the use of a deadly weapon, "...malice is implied from such assault in the absence of justifying or mitigating circumstances." (*Ibid.* at p. 526.) Thus, it has been held that where the

evidence before the grand jury or a magistrate establishes justifiable self-defense, the presumption of malice is implicitly rebutted. (See *Roads* v. *Superior Court, supra,* 275 Cal.App.2d at pp. 600-601; *People* v. *Garcia, supra,* 265 Cal.App.2d at p. 97.) And more recently, our highest state court has held that even an unreasonable but honest belief that deadly force is necessary to defend against imminent peril to life will negate malice so as to reduce a charge of murder to manslaughter. (See *People* v. *Flannel* (1979) 25 Cal.3d 668, 675-680 [160 Cal.Rptr. 84, 603 P.2d 1].) "The vice [in the crime of murder] is the element of malice; in its absence the level of guilt must decline." (*Ibid.* at p. 680.)

■ Herein, the record manifests a persuasive showing of circumstances mitigating any inference of malice. The only credible evidence as to the events surrounding the killing was supplied by petitioner's statement[3] which the magistrate accepted as true[4] in finding that petitioner acted out of fear for his life as the result of the repeated threats and aggressive conduct of the victim. While there was no express finding of petitioner's belief that deadly force was necessary to repel the apparent danger to life under the standard announced in *Flannel,* such finding was implicit in those actually made on the evidence presented without any taint of conjecture. (Cf. *People* v. *Superior Court* (*Gibson*) (1980) 101 Cal.App.3d 551, 554 [161 Cal.Rptr. 923].)

■ Unlike the circumstances reflected in *Pizano* v. *Superior Court* (1978) 21 Cal.3d 128 [145 Cal.Rptr. 524, 577 P.2d 659], the magistrate's determination that the crucial element of malice was negated by the showing of sufficient provocation was the product of a factual rather than a legal conclusion based upon uncontroverted evidence. Under such circumstances, that factual determination becomes fatal to the asserted charge of murder thus prohibiting the addition of that charge to that named in the commitment order. (*People* v. *Farley, supra,* 19 Cal. App.3d at p. 221.) Indeed, since that determination appears to be the only rational conclusion supported by the evidence (cf. *Jackson* v. *Superior Court, supra,* 62 Cal.2d at p. 528) the distinction seems more semantical than real.

---

[3] We have not overlooked the testimony of Officer Randall during cross-examination which tended to corroborate petitioner's version of the broken front window.

[4] That circumstance alone moots any necessity for extended discussion of the applicability of the so-called *Toledo* doctrine (see *People* v. *Toledo* (1948) 85 Cal.App.2d 577, 581 [193 P.2d 953]; cf. *People* v. *Ross* (1979) 92 Cal.App.3d 391, 400 [154 Cal.Rptr. 783].)

Let a writ of prohibition issue limited to the restraint of further proceedings against petitioner on the pending murder charge.

Newsom, J., and Grodin, J., concurred.