[No. A032576. First Dist., Div. Two. Mar. 6, 1986.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
DEAN RAY HENDERSON, Real Party in Interest.

**COUNSEL**

John K. Van de Kamp, Attorney General, Eugene W. Kaster and Kristofer Jorstad, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Patrick R. Murphy, Public Defender, Cynthia Dorfman and Jeffrey C. Bradley, Deputy Public Defenders, for Real Party in Interest.

## OPINION

**ROUSE, J.**—The People seek a writ of mandate to compel respondent superior court to reinstate a murder charge dismissed under authority of *Jones v. Superior Court* (1971) 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241].

On July 19, 1984, a complaint was filed accusing real party, Dean Ray Henderson, of the robbery and murder of Patricia Prenger. On May 8, 1985, at the conclusion of the preliminary hearing, Henderson was held to answer only for voluntary manslaughter. The magistrate stated that the death of Patricia Prenger occurred during the heat of passion and/or sudden quarrel.

On May 22, 1985, the People filed an information accusing Henderson of murder. Henderson filed a motion to set aside the information pursuant to Penal Code section 995 contending that the magistrate made factual findings fatal to the murder charge which precluded its refiling in superior court under the authority of *Jones v. Superior Court, supra,* 4 Cal.3d 660, and *Walker v. Superior Court* (1980) 107 Cal.App.3d 884 [166 Cal.Rptr. 209]. Respondent superior court concluded that the magistrate made a factual finding which was not subject to review and granted Henderson's section 995 motion. The People challenged the dismissal of the murder charge by this petition for writ of mandate. We issued an alternative writ and stayed Henderson's manslaughter trial.[1]

The relevant evidence presented at the preliminary hearing consisted of testimony by the investigating officers, the pathologist, Jeanna Hendriqson, a friend of Henderson's, and Larry Prenger, the victim's son.

Larry Prenger testified that Henderson lived on and off with his mother and was with his mother at her home on the evening of July 13, 1984. Both appeared to have been drinking and subsequently left to go to a liquor store. He last saw them a little after 9:30 p.m., walking toward home carrying bottles of wine. Larry Prenger returned home about 5:30 a.m., went briefly

---

[1]Writ review is available to the People. (See *People v. Superior Court (Gibson)* (1980) 101 Cal.App.3d 551 [161 Cal.Rptr. 923].)

to the kitchen, and then retired. He was awakened around 11:30 a.m. by the screams of his sister Patty. He went into his mother's bedroom and discovered her body.

Jeanna Hendriqson, a friend of Henderson's, testified that she received two telephone calls from Henderson in the early morning hours of July 14, 1984, one about 1:20 a.m. and another at 3 or 3:30 a.m. In the first call, Henderson told her that he was at Patricia Prenger's house, that they had been drinking a lot, and had had a fight. Henderson said that when they were ready to go to bed Pat had pulled on the membrane of his nose, which started spurting blood, and that he had kicked her in the head.

When he called Ms. Hendriqson again, Henderson told her that Pat's breathing wasn't good and asked how to check for a pulse. Ms. Hendriqson told him how to check for a pulse and to call an ambulance. Henderson said he had beaten Pat up "pretty badly" and asked Ms. Hendriqson not to call the police. He sounded nervous and worried during both conversations.

Officer Calderon, an evidence technician for the Richmond Police Department, testified that he found the victim lying on her back on the bed, her nude body covered with a sheet. There were multiple bruises and abrasions all over her body. There were bloodstains all around her head and a sheet underneath her was covered with blood. A broken light bulb was on her bed and a bedroom lamp was missing a bulb. A lampshade was found bent and stained with blood in the dining room. Officer Calderon also found bloodstains on the bedroom floor, on a cardboard box leaning against the bedroom wall, on the dining room carpet, the dining room heater, on a felt board on the dining room floor, on the dining room doorway areas, and on the east and north walls of the dining room. The victim's purse and wallet were never found.

Dr. Daugherty of the Contra Costa County Coroner's Office testified that he performed an autopsy on Patricia Prenger and that her death was the result of traumatic head injuries, including brain and scalp hemorrhages, and hemorrhages in the bones of her left ear and the covering of her right eye. He also testified as to other injuries on the victim's body sustained at about the same time. There were bruises on her right temple, around both eyes, the right chin, right neck, right back, right elbow, right forearm, hand, foot, thigh, and left upper arm and right and left knees. There were also abrasions on both elbows and knees and four abrasions on her right neck. Dr. Daugherty stated that these injuries were consistent with the victim having been kicked and beaten. Dr. Daugherty also stated that the head hemorrhages could have been caused by the victim's falling and hitting her

head with enough force. He ranked the severity of the beating as two or three on a scale of ten.

In holding Henderson to answer for manslaughter and not murder, the magistrate made the following remarks: "There is in this Court's mind no question but that the allegation concerning the death of Ms. Prenger have [*sic*] been shown, that is on July 14th she was killed. The only information this Court has that in fact relates this defendant guilty of causing her death is in fact the testimony [of] Ms. Hendriqson which the defendant indicates, one, that he kicked Ms. Prenger and that in fact that particular kicking was caused, at least initiated at the time when they were going to bed when in fact Ms. Prenger caused some harm to the defendant which caused him some bleeding. [¶] Therefore, this Court does find that the death of Ms. Prenger did occur during the heat of passion and/or sudden quarrel."

The district attorney refiled the murder charge in the information. Henderson moved to dismiss under Penal Code section 995, contending that the magistrate's factual findings precluded the filing of the murder charge. The superior court agreed and held that the magistrate's conclusion that the crime occurred in the heat of passion was a factual finding which barred the refiling of the murder charge under *Jones* v. *Superior Court, supra,* 4 Cal.3d 660. The superior court reached this conclusion reluctantly, noting that the transcript of the preliminary hearing established "abundant evidence which would support a holding order for murder."

The People maintain that the magistrate made no factual findings within the meaning of *Jones* and claim that they are entitled to refile the murder charge which was supported by the evidence presented at the preliminary hearing. Henderson contends that the magistrate's finding protects him against such a charge.

Penal Code section 739 authorizes the district attorney to file, in superior court, following the preliminary examination, "an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed." In accordance with the statute, the prosecutor may charge any offense disclosed by the evidence at the preliminary examination which is related to the charge for which the defendant has been held to answer, even though the magistrate concluded, impliedly or otherwise, that the evidence did not show probable cause that such offense had been committed. (*Parks* v. *Superior Court* (1952) 38 Cal.2d 609, 613-614 [241 P.2d 521]; *People* v. *Eitzen* (1974) 43 Cal.App.3d 253, 260 [117 Cal.Rptr. 772].) In *Jones* v.

*Superior Court, supra,* 4 Cal.3d 660, 666, the Supreme Court added the limitation that if the magistrate makes "material factual findings" which negate any possibility that the offense occurred, the prosecution may not ignore those findings and refile the charge.

In *Jones,* the defendant was charged with rape, oral copulation and sodomy. The magistrate, stating that he disbelieved the victim's testimony, found that neither the sodomy nor the oral copulation had taken place and that no force had been used. The defendant was held to answer only for "statutory rape." The district attorney filed an information charging all of the original offenses. The Supreme Court held that the factual determinations made by the magistrate, when he found that the victim's testimony lacked credibility, precluded further prosecution of those offenses in that proceeding.

Central to the *Jones* decision is the distinction between a magistrate's factual finding and a magistrate's legal conclusion regarding the sufficiency of the evidence. A magistrate's factual finding that there is no evidentiary support for the charge bars the prosecutor from refiling the charge in superior court. A magistrate's legal conclusion that the evidence is legally insufficient to support a holding order does not preclude the prosecutor from refiling a transactionally related charge. (*Jones* v. *Superior Court, supra,* 4 Cal.3d 660, 665-666; *People* v. *Farley* (1971) 19 Cal.App.3d 215, 221 [96 Cal.Rptr. 478].)

Later cases have struggled to delineate the distinction between a factual finding and a legal conclusion.[2] In *Dudley* v. *Superior Court* (1974) 36 Cal.App.3d 977 [111 Cal.Rptr. 797], the evidence showed that the defendant had beaten the victim who died of a brain hemorrhage. However, the death occurred only because of a preexisting aneurysm of which the defendant was unaware. The magistrate refused to hold defendant to answer for murder, stating that " '[t]here is no evidence . . . from which the Court can conclude [that] either express or implied malice existed in this case.' " (*Id.,* at p. 980.) The Court of Appeal concluded that this language was not a factual finding of a lack of malice fatal to the murder charge, but was only the magistrate's expression of a legal conclusion that the evidence of malice was insufficient. The court observed that there was evidence from which an inference of malice could be made and the magistrate indicated no disbelief of that evidence. In reaching its conclusion, the *Dudley* court noted that "[o]ur difficulty in finding clear guidance from the *Jones* opinion arises in part because of the unusually simple and clear-cut factual issue in

[2]The most recent opinion dealing with the *Jones* doctrine is *People* v. *Superior Court Day* (1985) 174 Cal.App.3d 1008 [220 Cal.Rptr. 330], in which the court concluded that the magistrate made no factual findings fatal to a murder charge and found suspect the notion of implied *Jones* findings.

that case, and the unusually specific finding made by the magistrate there. The *Jones* case depended upon the credibility of a single witness. The magistrate based his ruling upon the express finding that this witness did not tell the truth as to certain critical matters. In the case at bench, the magistrate's remarks leave considerable room for interpretation, as is often true of the impromptu statements of lawyers and judges." (*Id.*, at p. 981.)

In *People* v. *Lipinski* (1976) 65 Cal.App.3d 566 [135 Cal.Rptr. 451], the defendant was charged with conspiracy to sell narcotics, sale and possession for sale, but was held to answer only on the substantive charge of sale. Defendant was later recharged with conspiracy to sell and convicted of only that offense. The defendant claimed that the magistrate's ruling showed that he must have disregarded the testimony of one of the narcotics officers and therefore the conspiracy charge could not be refiled under the rationale of *Jones* v. *Superior Court, supra,* 4 Cal.3d 660. The Court of Appeal disagreed, noting that the record was silent with regard to the magistrate's belief about the officer's credibility and the magistrate's opinion that defendant was not chargeable with conspiracy amounted to no more than a sheer legal conclusion drawn from the evidence.

In *People* v. *Superior Court (Gibson), supra,* 101 Cal.App.3d 551, the defendant was charged with murder, kidnapping, and special circumstance allegations, but was held to answer only for murder. The superior court felt bound by what it characterized as "factual determinations" of the magistrate and dismissed the kidnapping and special circumstance allegations which had been refiled.[3] The Court of Appeal ordered the trial court to vacate its order and observed that the comments of the magistrate "were a mixture of

---

[3]"The purported 'factual determinations' of the magistrate consisted of the following comments made at the conclusion of the preliminary hearing: 'Now, as far as Mr. Gibson is concerned, the only evidence we have on Mr. Gibson is the fact that there is a body out there, that it's his wife, and she's been shot, apparently, with a high velocity projectile and that it went through her skull and killed her. From that point on, all we have is oral admissions of the defendant and, of course, they are to be viewed very carefully. One, there are two witnesses that are very doubtful in my mind whether they could be mistaken or their memories are very weak. There is [*sic*] enough witnesses to come in to indicate to me that Mr. Gibson did in fact say, "I killed her." There are other statements which are admissions as well which seem to indicate that yes, in fact, he did kill her. It's extremely weak. For the purposes of the preliminary hearing, it seems to me that there is enough to get it over the hurdle. Now, as far as the special circumstances, the fact that we have a body out there on the coast that's been killed by a high velocity projectile to the skull, I can't—I can't find from that any financial gain situation. I can't find from that any lying-in-wait situation. I can't find from that any kidnaping situation. I can't find any heinous, atrocious, and cruel killing and, of course, I can't tie in the last one with regards to the Enfield rifle. So, there is [*sic*] no special circumstances insofar as Mr. Gibson is concerned. As far as Count number II, the kidnapping, there's no evidence to show that Mr. Gibson in any way kidnapped his wife. So, it's just a nonspecial circumstance murder that I feel that Mr. Gibson is involved in.'" (*People* v. *Superior Court (Gibson), supra,* 101 Cal.App.3d 551, 553)

suggestions about his factual findings and statements about his conclusions concerning reasonable cause. The trial court attempted to guess which witnesses the magistrate found doubtful, and having made its guess felt bound by the magistrate's findings. But where guesswork is required to determine what the magistrate found, there is no finding worthy of the deference required by the *Jones* decision." (*People* v. *Superior Court (Gibson), supra,* 101 Cal.App.3d at p. 554.)

Henderson relies on *Walker* v. *Superior Court, supra,* 107 Cal.App.3d 884, which recognized the concept of an implied *Jones* finding, and which was cited by the superior court in its ruling. In *Walker,* the defendant, a liquor store owner, was charged with murder for the shooting death of a customer who had threatened to kill him and who was reaching for a weapon. The magistrate found that (1) the defendant knew of the victim's bad reputation; (2) the victim had threatened to kill the defendant shortly before the shooting; and (3) the defendant was in fear of his personal safety. The magistrate then concluded that there was sufficient provocation to rebut the presumption of malice and held the defendant to answer only for manslaughter. The Court of Appeal observed that the record manifested a persuasive showing of circumstances mitigating any inference of malice, and that the necessary additional finding that the defendant acted under an honest belief in the necessity of deadly force to save his life could be implied from the magistrate's findings without any taint of conjecture. The court then held that "the magistrate's determination that the crucial element of malice was negated by the showing of sufficient provocation was the product of a factual rather than a legal conclusion based upon uncontroverted evidence." (*Id.,* at p. 890.)

In *Walker* there was *no* evidence to controvert defendant's claim of self-defense. The magistrate's factual findings led directly to the finding that Walker acted under an honest belief in the necessity of deadly force to save his life. The *Walker* court stressed that the finding could be inferred from the uncontroverted state of the evidence without the guesswork condemned by the court in *People* v. *Superior Court (Gibson), supra,* 101 Cal.App.3d 551.

■ In the instant case, the magistrate found that (1) Henderson kicked Mrs. Prenger; (2) the kicking was caused or initiated by Mrs. Prenger causing some harm to Henderson; and (3) this harm caused Henderson to bleed. Unlike *Walker,* these findings do not inexorably lead to the conclusion that Mrs. Prenger's death occurred in the heat of passion and/or sudden quarrel. ■ ■ ■ The magistrate simply accepted the hearsay statements made by defendant to Mrs. Hendriqson and reached an ultimate *legal* conclusion

that such evidence precluded a holding order for murder.[4] Such a conclusion is open to challenge by inclusion in the information. (*People* v. *Superior Court* (*Gibson*), *supra,* 101 Cal.App.3d 551, 554. ██ "Absent controlling factual findings, if the magistrate dismisses a charge when the evidence provides a rational ground for believing that defendant is guilty of the offense, his ruling is erroneous *as a matter of law,* and will not be sustained by the reviewing court." (*People* v. *Slaughter* (1984) 35 Cal.3d 629, 639-640 [200 Cal.Rptr. 448, 677 P.2d 854].)[5]

██ As respondent superior court noted in the present case, there was abundant evidence which would support a holding order for murder: "The victim received a vicious beating, was kicked in the head and left to die, and defendant claimed responsibility for the acts. The facts demonstrate such a high degree of viciousness and extreme indifference to human life, that one could more than reasonably determine that the killing was done with malice aforethought."

The trial court, after stating it was bound by the magistrate's findings, went on to note that "many questions surrounding the offense remain unanswered. In view of the victim's battered condition, the likelihood that she acted in her own defense cannot be ignored; if she did not initiate the provocation, 'heat of passion' would not serve to reduce the murder to manslaughter. *People* v. *Spurlin* (1984) 156 Cal.App.3d 119. As death was inflicted by beating, there is a possibility that this was a torture murder, hence, malice could be inferred. *People* v. *Talamantez* (1985) 169 Cal.App.3d 443."

We conclude that the magistrate made no factual finding, express or implied, fatal to the murder charge. Since the murder charge is transactionally related to the manslaughter offense and supported by the evidence presented at the preliminary hearing, the People are entitled to bring Henderson to trial on this charge.

---

[4]The concept of "heat of passion" allows a defendant to reduce a killing from murder to manslaughter only in those situations where the provocation would trigger a homicidal reaction in the mind of an ordinarily reasonable person under the given facts and circumstances. (See *People* v. *Jackson* (1980) 28 Cal.3d 264, 305-306 [168 Cal.Rptr. 603, 618 P.2d 149].)

[5]As noted in *People* v. *Superior Court* (*Day*), *supra,* 174 Cal.App.3d 1008, 1019, footnote 5, the Supreme Court has never actually addressed the question of implied *Jones* findings. In *People* v. *Slaughter, supra,* 35 Cal.3d 629, the court reviewed its line of *Jones* cases in terms suggesting factual findings must be express, but without directly resolving the issue. (*People* v. *Slaughter, supra,* at pp. 638-639.) The court discussed *Jones; People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]; *Pizano* v. *Superior Court* (1978) 21 Cal.3d 128 [145 Cal.Rptr. 524, 577 P.2d 659]; and one Court of Appeal decision, *People* v. *Farley, supra,* 19 Cal.App.3d 215. The court did not mention *Dudley* v. *Superior Court, supra,* 36 Cal.App.3d 977; *Walker* v. *Superior Court, supra,* 107 Cal.App.3d 884; or *People* v. *Superior Court* (*Gibson*), *supra,* 101 Cal.App.3d 551.

Let a peremptory writ of mandate issue commanding respondent court to vacate its order dismissing the murder charge, and to enter a new and different order reinstating the charge. The stay heretofore imposed shall be dissolved upon the finality of this decision.

Kline, P. J., and Smith, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied June 5, 1986.