[No. A034325. First Dist., Div. Four. Mar. 31, 1987.]

THE PEOPLE, Plaintiff and Appellant, v.
KEVIN C. McGLOTHEN et al., Defendants and Respondents.

1006

**COUNSEL**

John K. Van de Kamp, Attorney General, Ann K. Jensen and Rene A. Chacon, Deputy Attorneys General, for Plaintiff and Appellant.

James R. Jenner, Public Defender, John E. Costain, Assistant Public Defender, and Ruth Spear, under appointment by the Court of Appeal, for Defendants and Respondents.

**OPINION**

**ANDERSON, P. J.**—The People appeal from a superior court order denying their Penal Code[1] section 871.5 motion to reinstate the complaint charging each respondent with two felony counts of attempted murder (§ 187) allegedly committed while using firearms (§§ 12022.5/1203.06), and one misdemeanor count of unlawfully carrying loaded firearms in a public place (§ 12031). We reverse.

---

[1]All statutory references are to the Penal Code.

# I

## *First Preliminary Hearing*

This case involves a shooting at the intersection of Prince and California Streets in Berkeley. Only two witnesses testified at the preliminary examination.

Robert Dubois testified that he was standing near the intersection when he saw two cars coming up California approaching Prince. The first car was a "greenish color" Chevrolet with a Black male driving and a Black male in the back seat. The man in the back seat had a gun. The car turned onto Prince Street and parked.

The second car was a "brownish" Cadillac with a white top. It carried four Black males, two in the front seat and two in the back. Mr. Dubois testified that he saw guns in both the front and back seats of the car. He identified the weapon in the front seat as an Uzi submachinegun. The Cadillac followed the Chevrolet and stopped six to eight feet behind it in the middle of the intersection.

Seconds after the cars arrived at the intersection, the occupants began shooting at each other. Mr. Dubois initially testified that he thought the men in the Cadillac started shooting first; however, he later indicated he was not sure who fired first. At some point the back window of the Chevrolet was shot out.

When the shooting started, Mr. Dubois first took cover behind some trees and later moved behind the side of a building. From his second position he could not see the Cadillac or the Chevrolet, but he did observe a third car approaching the scene. He identified the car as a light brown "Buick-type" vehicle. It was headed west on Prince. While Mr. Dubois indicated that the third car was "one color," he could not be sure whether it was a Buick or a Cadillac. This car also carried two Black males, one driving and one in the back seat with a rifle. Mr. Dubois could not be sure if the occupants of this car did any shooting because there was still gunfire going on when it arrived on the scene.

When the shooting stopped, Mr. Dubois did not see what happened to any of the cars, although he did hear a car leave the scene. He indicated that throughout the incident he never saw anyone enter or leave any of the vehicles. After the police arrived he was asked to identify a Chevrolet and a Cadillac. He could only identify the Chevrolet as being one of the cars at the scene of the shooting.

Officer Gustafson testified that he was one block away (at the southwest corner of Prince and Sacramento Streets) when the shooting started. Immediately, he and his partner started running to their patrol car which was across the street (at the northwest corner of Prince and Sacramento). While crossing the street, Officer Gustafson looked east on Prince and observed a "black over goldish color late '60's Cadillac" near the intersection of Prince and California. The vehicle was facing west on Prince, but he could not tell if it was moving. It took approximately 10 seconds to get to his patrol car after he observed the Cadillac. Once in the patrol car he saw the same Cadillac turn in front of him and head southbound on Sacramento. When it turned onto Sacramento he saw two occupants in the car. At no time did the officer see anyone enter or exit the Cadillac while it was on Prince Street.

Officer Gustafson followed the vehicle as it drove southbound on Sacramento Street. Suspecting it was involved in the shooting, the officers stopped the vehicle and ordered the occupants (respondents) out of the car. Both were in the front seat. After respondents were ordered from the car, Officer Gustafson noticed two weapons inside the vehicle. One was "an H-K brand model 94 semi-automatic rifle that was laying across the back seat." The other was "a 9 millimeter Uzi submachine gun which was partially concealed beneath a blanket in the center of the front seat."

When Mr. Dubois was shown the Cadillac driven by respondents (a black over gold), he was "not sure if it was the car" involved.

Respondents were arrested and a "SEM-EDX" test administered to determine if they had recently used a firearm. The samples taken from the back of respondents' hands revealed positive identification of gunshot residue. The criminologist testified that "It is generally thought of that the residue is blasted out of the weapon and onto the back of the hand mainly when a weapon is discharged."

Although indicating that "several felony offenses have occurred," the magistrate dismissed all charges against respondents. In failing to find probable cause, the magistrate pointed to, first, a Cadillac is seen with four people in it and respondents are pulled over in a Cadillac with only two occupants; second, Mr. Dubois testified he had only seen a *white top* Cadillac involved in the shooting and the respondents had been found in a *black top* Cadillac; and third, no one testified that a Cadillac with a black top was involved in the shooting.

*First Section 871.5 Motion to Reinstate*

The People filed a motion to reinstate the complaint pursuant to section 871.5. After reviewing the evidence, Judge Eaton ordered the complaint rein-

stated and remanded the case to the magistrate for further proceedings. In doing so, the court ordered the magistrate to "hear any evidence sought to be presented . . . and to make such orders as you deem suitable at the conclusion of the proceedings, including, if no additional evidence is offered, and you make no adverse findings of fact, an order of commitment holding defendants to answer to the reinstated offenses."

### Second Preliminary Hearing

No further evidence was admitted at the second preliminary hearing. However, the magistrate issued the following statement of decision. "II) A) Eyewitness Dubois saw three vehicles at the scene, each occupied by black males with weapons: [¶] 1) The shootings were committed by four black males in a brown four-door Cadillac with a white top, pointing North on California Street. An Uzi was pointed out the front passenger window and a second weapon was pointed from the rear passenger seat. [¶] 2) The object of the shooting was a green Chevrolet, occupied by two black males, who returned the fire; this vehicle was parked pointing East on Prince Street. [¶] 3) A third car, an old brown four-door Buick or Cadillac, was headed West on Prince Street; a black male was driving and a second black male was in the rear passenger seat holding a large black gun. [¶] B) Seconds after the shooting the defendants were sighted by Officer Gustafson, heading West on Prince Street at the intersection of California Street in a gold four-door Cadillac with a black vinyl top; Officer Gustafson saw no other cars on Prince Street, and no one was seen entering or exiting the vehicle. When the car was stopped, there were two men (the defendants) in the front seat of the car; an Uzi was in the front seat and a H-K 94 semiautomatic rifle was in the back seat. Both defendants tested positive for gunshot residue on both hands. [¶] C) When shown a photograph of the two weapons seized from the defendant's vehicle, the eyewitness recognized only an Uzi; when taken to view the defendants' vehicle immediately after the shootings, the witness could not identify it."

In addition to the above, the magistrate found both Officer Gustafson and Mr. Dubois to be credible witnesses. As in the first preliminary hearing, the magistrate focused on the discrepancy between Mr. Dubois seeing a white top on the car involved in the shooting and the respondents being stopped in a car with a black top.

Based upon these findings and a calculation of probability, the magistrate concluded there was a lack of probable cause to hold respondents to answer for the crimes charged and, once again, dismissed the complaint.

### Second Section 871.5 Motion to Reinstate

The People again filed a motion to reinstate the complaint pursuant to section 871.5. Although not entirely sure what findings were made by the

magistrate, Judge Eaton nevertheless concluded, "she made findings of fact which leads to the conclusion that the defendants were not involved in this matter." He therefore denied the motion to reinstate the complaint, and this appeal followed.

## II

■ The central issue before us is whether as a matter of law the magistrate erred in determining there was insufficient probable cause to hold respondents to answer for the offenses charged. We find she did and, therefore, reverse the order denying the motion to reinstate the complaint.

■ The principles defining the role of a committing magistrate are well settled. (*People* v. *Slaughter* (1984) 35 Cal.3d 629, 636-637 [200 Cal.Rptr. 448, 677 P.2d 854].) "Evidence that will justify a prosecution need not be sufficient to support a conviction [citations]. . . . An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it. [Citations.]" (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474 [62 Cal.Rptr. 581, 432 P.2d 197]; *People* v. *Slaughter, supra,* at p. 637.) "In short, the magistrate is not a trier of fact. He does not decide whether defendant committed the crime, but only whether there is "some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it." [Citation.]' " (*Id.,* at p. 637.)

■ The standard of review for challenging a magistrate's ruling under section 871.5[2] was established in *People* v. *Slaughter, supra,* 35 Cal.3d 629. After reviewing the role of the committing magistrate and the standard of review of a magistrate's dismissal order under section 739,[3] the court concluded that the Legislature intended to incorporate the section 739 standard into section 871.5. (At pp. 636-640.) That is, "findings of fact must be sustained if supported by substantial evidence, but a finding of lack of probable cause, unsupported by any factual findings, is reviewed as an issue of law. Absent controlling factual findings, if the magistrate dismisses a charge when the evidence provides a rational ground for believing that defendant

---

[2]The section provides in part: "(a) When an action is dismissed by a magistrate pursuant to section 859b, 861, 871, 1008, 1381, 1381.5, 1385, 1387, or 1389, . . . the prosecutor may make a motion in the superior court . . . to compel the magistrate to reinstate the complaint. . . . [¶] (b) . . . The only ground for the motion shall be that, as a matter of law, the magistrate erroneously dismissed the action or a portion thereof."

[3]Section 739 provides: "When a defendant has been examined and committed, . . . it shall be the duty of the district attorney . . . to file in the superior court . . . an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed. . . ."

is guilty of the offense, his ruling is erroneous *as a matter of law,* and will not be sustained by the reviewing court." (*Id.,* at pp. 639-640, original italics.)

Respondents contend the magistrate made factual findings fatal to reinstatement of the complaint rather than conclusions of law. As the court recognized in *Slaughter,* unlike conclusions of law, if the magistrate makes factual findings, those findings are binding upon the reviewing court if supported by substantial evidence. (*People* v. *Slaughter, supra,* 35 Cal.3d at p. 639.) ██ Respondents argue that the findings made below led inexorably to the ultimate finding of fact that they were not involved in the shooting and we should therefore limit our review to the question of whether that finding is supported by substantial evidence.[4] We disagree.

The magistrate's findings of credibility followed the remand order of the superior court, which directed her to make an order of commitment holding defendants to answer to the reinstated offenses "if no additional evidence is offered and you make no adverse Finding of Fact." No additional evidence was offered by either party; the sole question facing us then is whether the magistrate made an adverse finding of fact.

We begin and end our analysis with an examination of what findings of fact the magistrate actually made—findings contained in a four-page statement of decision and its one omission which she put on the record: "That I found both witnesses, Officer Gustafson to be credible, and also Officer Dubois to be credible witnesses."

The "credible" testimony of Officer Gustafson, part of which the magistrate recited in her discharge order, establishes that shortly after he heard shots fired in the vicinity of Prince and California Streets, Officer Gustafson sighted the respondents in a Cadillac quickly leaving the area, followed and stopped them; an Uzi submachinegun was found in the front seat and a semi-automatic rifle in the back seat. Both respondents tested positive for gunshot residue on samples taken from the backs of their hands, indicating those hands had been in close proximity to the firing of a weapon. No reasonable person could seriously dispute that this evidence, if believed, is itself sufficient cause to believe the respondents guilty of a public offense.

---

[4]One of the respondents also relies on *Jones* v. *Superior Court* (1971) 4 Cal.3d 660 [94 Cal.Rptr. 289, 483 P.2d 1241] for the proposition that the magistrate made *express* findings of fact fatal to the complaint. Such reliance is misplaced. In *Jones,* the magistrate specifically found, as a matter of fact, that the alleged rape victim had consented to intercourse with the defendants and that no acts of oral copulation or sodomy occurred. Our Supreme Court held that such findings precluded the filing of a charge of forcible rape against the defendants. In the present case the magistrate never expressly stated, as a matter of fact, that the car respondents were driving was not involved in the shooting.

What complicates matters here is the testimony of Mr. Dubois, which was also believed by the magistrate. That testimony was found by the magistrate to contradict the officer's, and it is that discrepancy upon which she bases her discharge order—that Mr. Dubois saw that a Cadillac involved in the shooting had a *white* top, contained *four* men and was traveling *north* on California, while Officer Gustafson first saw a *black* top Cadillac, containing *two* men (respondents) and traveling *west* on Prince.

To uphold her order the "credible" testimony of Mr. Dubois must be an adverse finding of fact. Just what then would be an adverse finding of fact? Certainly, that Mr. Dubois saw all the persons involved in the shooting and positively excluded respondents. To find that respondents numbered but two of four and were seen leaving the scene of the shooting in a car described differently from one involved, if that indeed is the logical conclusion to be drawn concerning the magistrate's finding, is simply not an adverse fact which destroys the People's case.

That the magistrate's written response to the superior court's order to "make an order of commitment holding defendant to answer" or to make "adverse findings of fact" was less than responsive is best illustrated by her concluding assessment of the evidence, "weighing all inferences in favor of the prosecution:" (a) "the probability that the shooting vehicle turned West on Prince Street . . . = 33 1/3 %"; (b) "the probability that two men left the car . . . = 100%"; (c) "the probability that the white-topped Cadillac changed to one with a black vinyl top within the space of one block, or that the witness was mistaken in his color identification . . . = 10%"; and (d) "the probability that the defendants' vehicle, and therefore the defendants, were involved in the shootings is 100% x 33 1/3% x 10% = 3.3%." Charitably stated such assessment is neither finding nor fact.

Respondents principally rely on *Walker* v. *Superior Court* (1980) 107 Cal.App.3d 884 [166 Cal.Rptr. 209]. In that case a liquor store owner was charged with the murder of a customer who had previously made death threats to the owner, and who was apparently in the act of reaching for a weapon. The court found that the magistrate had made three findings: (1) Walker knew of the victim's bad reputation; (2) the victim threatened to kill Walker and engaged in aggressive conduct directed at Walker; and (3) Walker was in fear of his personal safety. The court concluded that these findings prohibited the prosecution from filing a charge of murder, reasoning: "While there was no express finding of petitioner's belief that deadly force was necessary to repel the apparent danger to life . . ., such a finding was implicit in those actually made on the evidence presented without any taint of conjecture. (Cf. *People* v. *Superior Court* (*Gibson*) (1980) 101 Cal.App.3d 551, 554 [161 Cal.Rptr. 923].)"[5] (*Walker* v. *Superior Court, supra,* 107 Cal.App.3d at p. 890.)

---

[5]In *Gibson*, the court concluded that the comments of the magistrate "were a mixture of suggestions about his factual findings and statements about his conclusions concerning reason-

*Walker* involved an unusual set of circumstances. There was no evidence before the court to controvert the claim by Walker of self-defense. In addition, the findings made by the magistrate could be viewed as leading to only one logical result. There was no guesswork involved in making an implied finding of fact fatal to the complaint based on the other findings expressly made by the magistrate. (See *People* v. *Superior Court (Henderson)* (1986) 178 Cal.App.3d 516, 523 [223 Cal.Rptr. 741]; *People* v. *Superior Court (Day)* (1985) 174 Cal.App.3d 1008, 1018 [220 Cal.Rptr. 330].)

In the present case, unlike *Walker,* there was evidence presented to controvert respondents' claim of lack of involvement in the shooting. Officer Gustafson's credible testimony and the results of the "SEM-EDX" test finding gunpowder residue on respondents' hands cannot be ignored in supporting an inference that they were involved. Taken as a whole, the findings of the magistrate cannot be interpreted as leading "inexorably to the implication of the final finding" that respondents were not involved in this matter. (*People* v. *Superior Court (Day), supra,* 174 Cal.App.3d at p. 1018.)

The magistrate's first conclusion that discharge is "mandated" because "the People have failed to prove the corpus delicti of the crime of attempted murder" is apparently based upon her erroneous conclusion that the complaint must name "a particular victim" (and not "John Doe"). There was no evidence to "deduce (1) the state of mind of the perpetrator of the shooting or (2) the injury, if any, which resulted therefrom." ██ ██ It is well established, however, that the state of mind of the perpetrator is not an element of corpus delicti (*People* v. *Manson* (1977) 71 Cal.App.3d 1, 25 [139 Cal.Rptr. 275]; *People* v. *Albin* (1970) 9 Cal.App.3d 31, 37 [88 Cal.Rptr. 422]; *People* v. *Scott* (1969) 274 Cal.App.2d 905, 907-908 [79 Cal.Rptr. 587]) and that the failure to name the victim or his injuries is not sufficient reason to dismiss the information. The information is adequate as it describes the elements of the crime. (§ 956; *Canon* v. *Justice Court* (1964) 61 Cal.2d 446, 451 [39 Cal.Rptr. 228, 393 P.2d 428]; Witkin, Cal. Criminal Procedure (1985 supp.) § 197, p. 241.) That the magistrate found there was a victim of crime is clear from her written statement of decision: "(II)(a) Eyewitness DuBois saw three vehicles at the scene, each occupied by black males with weapons: . . . (2) the object of the shooting was a green Chevrolet, occupied by two black males, who returned the fire; . . ."

CONCLUSION

██ By emphasizing the discrepancy between the different color tops on the cars involved, the magistrate took a far too narrow view of the evidence

---

able cause. The trial court attempted to guess which witnesses the magistrate found doubtful, and having made its guess felt bound by the magistrate's findings. But where guesswork is required to determine what the magistrate found, there is no finding worthy of the deference required by the *Jones* decision." (*People* v. *Superior Court (Gibson), supra,* at p. 554.)

presented. While this evidence might prevent a finding of guilt beyond a reasonable doubt, that is not the purpose of a preliminary hearing.

In the present case there was evidence presented which was unimpeached and credible that supported the inference that respondents were guilty of attempted murder and unlawfully carrying a loaded firearm in public. In dismissing the complaint the magistrate came to the legal conclusion that the evidence was insufficient to find probable cause. This ruling was error as a matter of law and not entitled to the deference given to it by the superior court.

The order denying the motion to reinstate the complaint is reversed.

Channell, J., and Sabraw, J., concurred.

The petition of respondent Turner for review by the Supreme Court was denied June 17, 1987.